77 F.3d 483
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Jesse RICE and Bricelia Rice, Plaintiffs-Appellees,
v.
Raymond GERCAR and Michael Carosielli, Defendants-Appellants.
 Nos. 95-3418, 95-3419.
 United States Court of Appeals, Sixth Circuit.
 Feb. 15, 1996.
 
 On Appeal from the United States District Court, for the Northern District of Ohio, No. 92-01752; Kathleen M. O'Malley; District Judge.
 N.D.Ohio
 AFFIRMED IN PART, REVERSED IN PART.
 Before: KENNEDY, GUY and RYAN, Circuit Judges.
 PER CURIAM.
 
 
 1
 Claiming that the District Court erred in denying their motions for summary judgment in this Section 1983 action, defendants Raymond Gercar and Michael Carosielli appeal on the ground that they are entitled to qualified immunity. For the reasons stated, we AFFIRM the denial of summary judgment on the ground of qualified immunity as to Officer Gercar and REVERSE the denial of summary judgment on the ground of qualified immunity as to Officer Carosielli.
 
 I. Facts
 
 2
 As Officer Carosielli and Sergeant Gercar, members of the Narcotics Unit of the Cleveland Police Department, were patrolling an area of Cleveland, they approached a young man they believed had just engaged in a drug transaction. Officer Carosielli saw what he thought to be crack cocaine in the suspect's mouth and, in an effort to preserve the evidence and prevent the suspect from swallowing the drugs, he held the suspect's neck in what appeared to be a choke hold. The suspect was subsequently arrested.
 
 
 3
 Observing these events, Bricelia Rice instructed her husband, Jesse Rice, to get their video camera. Sergeant Gercar observed Mr. Rice on the front porch with a video camera and, believing that he taped the events related to the drug transaction, went to the Rices' front porch and requested the videotape. Claiming he "had everything on tape," Mr. Rice refused to surrender it, told Sergeant Gercar he would only produce the tape pursuant to a warrant, and ordered Sergeant Gercar off his property. Gercar left.
 
 
 4
 About two hours later, Sergeant Gercar instructed other officers to tell Mr. Rice that if he refused to surrender the tape he would be arrested for obstruction of justice. Officers so advised Mr. Rice and at that point he complied with the officers' request. Subsequently, Officer Carosielli viewed the seized tape at the Justice Center and again at his home. The tape contained no footage of the drug transaction, the concealment of drugs, or the arrest. Instead, it contained footage of a family reunion, other family events, and portions of the events following the arrest in front of the Rice home.
 
 
 5
 Claiming that Sergeant Gercar violated their Fourth Amendment rights when he directed other officers to seize the videotape, and that Officer Carosielli violated their Fourth Amendment rights when he viewed the videotape, the Rices filed this Section 1983 action.[1] Plaintiffs and defendants moved for summary judgment. Sergeant Gercar argued that the presence of exigent circumstance and the plain view doctrine justified the seizure of the videotape, and therefore, he was entitled to qualified immunity. Officer Carosielli claimed that viewing the videotape was not a search under the Fourth Amendment, and therefore, he too was entitled to qualified immunity. The District Court denied both Sergeant Gercar's and Officer Carosielli's motions for summary judgment on the basis that they violated clearly established law, and thus, were not entitled to qualified immunity, and granted plaintiffs' motion for summary judgment.
 
 II. Qualified Immunity
 
 6
 Because the issue of qualified immunity is a question of law, we review an order denying summary judgment on the basis of qualified immunity de novo. Black v. Parke, 4 F.3d 442, 444 (6th Cir.1993). We have held that "[g]overnment officials who perform discretionary functions are generally entitled to qualified immunity and are protected from civil damages so long as 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " Pray v. City of Sandusky, 49 F.3d 1154, 1157 (6th Cir.1995) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "The standard is one of objective reasonableness, analyzing claims of immunity on a fact-specific, case-by-case basis to determine whether a reasonable official in the defendants' position could have believed that his conduct was lawful, in light of clearly established law and the information he possessed." Pray, 49 F.3d at 1158 (citing Anderson v. Creighton, 483 U.S. 635, 640 (1987)).
 
 
 7
 When a claim to qualified immunity arises in the context of a motion for summary judgment, we must inquire whether (1) the right allegedly violated was clearly established; and (2) whether reasonable officers in defendants' positions should have known that their conduct was undertaken in violation of that right. O'Brien v. City of Grand Rapids, 23 F.3d 990, 999 (6th Cir.1994). The right the Rices allege to have been violated was clearly established: the right of persons to be free from unreasonable warrantless searches and seizures of their property. The relevant questions, therefore, are (1) whether an objectively reasonable officer would have believed that either exigent circumstances or the plain view doctrine justified the warrantless seizure of the videotape, in light of clearly established law and the information possessed by Sergeant Gercar; and (2) whether an objectively reasonable officer would have believed that the warrantless search of the videotape was not unreasonable, in light of clearly established law and the information possessed by Officer Carosielli.
 
 III. The Seizure of the Videotape
 A. Exigent Circumstances
 
 8
 Under the exigency exception to the warrant requirement, a warrantless seizure will not violate the Fourth Amendment when the police have a reasonable basis for believing that there is a likelihood that the evidence will be destroyed. United States v. Roark, 36 F.3d 14, 17 (6th Cir.1994). Unsubstantiated suspicions that evidence will be destroyed are not enough to justify a warrantless seizure. Id.
 
 
 9
 We reject Sergeant Gercar's argument that Mr. Rice's hostile behavior toward the officers could reasonably lead him to believe that Mr. Rice might erase the videotape if it were not seized immediately. Instead, the facts do not support a reasonable basis to suspect that Mr. Rice would likely destroy or alter the tape. Mr. Rice expressed his willingness to surrender the tape pursuant to a lawful warrant or subpoena and expressed no intention to erase the tape. Because Sergeant Gercar did not have a reasonable basis for believing that Mr. Rice would alter or destroy the tape, he is not entitled to qualified immunity on the basis that exigent circumstances excused his warrantless seizure of the videotape.
 
 B. The Plain View Doctrine
 
 10
 Sergeant Gercar also claims that the plain view exception to the warrant requirement excuses his warrantless seizure of the videotape. The predicates to a warrantless seizure of incriminating evidence under the plain view doctrine are: (1) the officer did not violate the Fourth Amendment in arriving at the place from which the evidence was plainly viewed; (2) the item was in plain view; (3) the item's incriminating character was immediately apparent; and (4) the officer had a lawful right of access to the object. Horton v. California, 496 U.S. 128, 136-37 (1990).
 
 
 11
 Because Sergeant Gercar had no lawful right of access to the videotape at the time he instructed officers to seize it, we do not address whether the seizure satisfied the other requirements of the plain view doctrine. The Supreme Court has described the lawful right of access requirement as
 
 
 12
 simply a corollary of the familiar principle ... that no amount of probable cause can justify a warrantless search or seizure absent 'exigent circumstances.' Incontrovertible testimony of the senses that an incriminating object is on premises belonging to a criminal suspect may establish the fullest possible measure of probable cause. But even where the object is contraband, this Court has repeatedly stated and enforced the basic rule that the police may not enter and make a warrantless seizure.
 
 
 13
 Horton, 496 U.S. at 137 n. 7 (quoting Coolidge v. New Hampshire, 403 U.S. 443, 468 (1971)) (citations omitted). Even though the Rices have a reduced expectation of privacy on their front porch, for it is open to public view, see United States v. Dunn, 480 U.S. 294, 301 (1987), the lawful right of access requirement protects property, not privacy, interests. The requirement insures that plain view seizures are not accomplished by warrantless trespasses. Horton, 496 U.S. at 137.
 
 
 14
 Even though Sergeant Gercar's initial entry onto the Rices' front porch for the purpose of requesting the videotape was not unlawful, once Mr. Rice told him that he would only surrender the tape pursuant to a warrant and instructed him to get off the porch, he was excluded from the porch. At that point, he could lawfully return for the purpose of seizing the videotape only with a warrant, in the presence of circumstances excusing the warrant requirement, or with Mr. Rice's permission. Nonetheless, Sergeant Gercar instructed officers to threaten Mr. Rice with arrest if he did not surrender the tape. Given Mr. Rice's prior directive, however, those officers had no lawful right of access to the porch or the tape. Thus, the plain view doctrine does not excuse the warrantless seizure of the videotape.
 
 
 15
 Because the lawful right of access requirement of the plain view doctrine was clearly established at the time of this occurrence, and a reasonable officer in Sergeant Gercar's position should have known that the seizure of the videotape was in violation of the plaintiffs' Fourth Amendment rights, we affirm the District Court's finding that Sergeant Gercar was not entitled to qualified immunity on that basis.
 
 
 16
 Therefore, the District Court properly denied Sergeant Gercar's motion for summary judgment on the grounds that he was not entitled to qualified immunity.
 
 IV. The Search of the Videotape
 
 17
 The warrantless search of the videotape would violate the Fourth Amendment only if the Rices manifested a subjective expectation of privacy in the contents of the tape that society accepts as objectively reasonable. See California v. Greenwood, 486 U.S. 35, 39 (1988). The Supreme Court has on a number of occasions suggested that there can be no reasonable expectation of privacy in what is exposed to the public. See, e.g. id. at 39-40; California v. Ciraolo, 476 U.S. 207, 213-14 (1986); Katz v. United States, 389 U.S. 347, 351 (1967). In other words, society has not accepted as objectively reasonable an expectation of privacy in public events. Absent a legitimate expectation of privacy, there is no "search" subject to the warrant clause of the Fourth Amendment. Illinois v. Andreas, 463 U.S. 765, 771 (1983).
 
 
 18
 In denying Officer Carosielli qualified immunity, the District Court relied on Walter v. United States, 447 U.S. 649 (1980). We find the District Court's reliance on Walter to be misplaced.
 
 
 19
 In Walter, agents of the Federal Bureau of Investigation lawfully obtained possession of films that were delivered to the wrong party through the mail. Id. at 651. The films' boxes, which arrived in securely sealed packages, indicated that the films contained pornographic materials. Id. at 651-52. Upon receiving the films, agents viewed them without first obtaining a search warrant. Id. at 652. The Supreme Court found that, by wrapping and sealing the packages containing the films before mailing them, the sender had demonstrated an expectation of privacy with respect to the contents of the films. Id. at 658. Therefore, absent circumstances excusing the warrant requirement, agents were required to obtain a warrant before viewing the films. See id. at 659.
 
 
 20
 Unlike the defendants in Walter, the Rices did not have a reasonable expectation of privacy in the contents of the tape, at least to the extent that the videotape documented events that occurred in a public place and in the presence of the viewing officer. See United States v. Whitten, 706 F.2d 1000, 1011 (9th Cir.1983) (finding no reasonable expectation of privacy in an answering machine tape to the extent it recorded communications that were broadcast aloud while agents were executing a search warrant on the premises), cert. denied, 465 U.S. 1100 (1984). Because the Rices did not have a reasonable expectation of privacy in the events surrounding the arrest, Officer Carosielli's first and second viewing of at least the portion of the tape regarding those public events was not a search in violation of the Fourth Amendment.
 
 
 21
 Thus, we must decide whether Officer Carosielli's viewing of that part of the videotape that contained footage of nonpublic events violated the Rice's Fourth Amendment rights. It was inevitable that upon viewing the videotape Officer Carosielli would view footage not relevant to the events surrounding the arrest. To the extent that Officer Carosielli's first viewing of the videotape involved viewing footage of Rice family events, we find that it was inadvertent and did not violate the Rices' Fourth Amendment rights against unreasonable searches. See United States v. Henson, 848 F.2d 1374, 1383-84 (6th Cir.1988) (finding that the inadvertent seizure of documents not relevant to the proceeding did not violate defendant's Fourth Amendment rights), cert. denied, 488 U.S. 1005 (1989); Whitten, 706 F.2d at 1013 (affirming a district court opinion finding no Fourth Amendment violation where officers, after completely rewinding an answering machine tape, inadvertently heard messages other than those they were otherwise entitled to hear).
 
 
 22
 To the extent that Officer Carosielli's second viewing of the tape revealed no additional information regarding nonpublic events than did the first viewing, Officer Carosielli's second viewing of the videotape did not violate plaintiffs' Fourth Amendment rights. That is, to the extent that Officer Carosielli re-viewed the videotape, the second viewing constituted no greater an intrusion than did the first viewing, and therefore, was not a search within the meaning of the Fourth Amendment. See Andreas, 463 U.S. at 771-73 (finding that an individual does not have a legitimate expectation of privacy in the contents of a container once that container has been lawfully searched); United States v. Garcia, 909 F.2d 389, 392 (9th Cir.1990) (holding that an officer's second squeezing of the contents of a fanny pack was not an additional search for Fourth Amendment purposes because it constituted no greater an intrusion than the initial, lawful frisk and revealed no additional information).
 
 
 23
 Because Officer Carosielli's viewings of the videotape violated no clearly established law, he is entitled to qualified immunity on plaintiffs' claim and, thus, summary judgment should have been granted in his favor.
 
 V. Conclusion
 
 24
 For the stated reasons, we AFFIRM the District Court's denial of summary judgment on the grounds of qualified immunity as to Sergeant Gercar and REVERSE the District Court's denial of summary judgment on the grounds of qualified immunity as to Officer Carosielli.
 
 
 25
 RALPH B. GUY, Jr., Circuit Judge, concurring.
 
 
 26
 I concur in the court's conclusions and reasoning, except as to Part IV of the opinion in which I concur in the result only. As to Part IV, I believe the Rices did have a reasonable expectation of privacy as to the contents of the videotape, but that, under the circumstances present here, Officer Carosielli reasonably could not have been expected to know he committed a constitutional violation by viewing the tape.
 
 
 27
 RYAN, Circuit Judge, concurring in part and dissenting in part.
 
 
 28
 While I concur with part III. of the majority opinion, which affirms the trial court's judgment denying defendant Gercar qualified immunity, I must respectfully dissent from part IV. of the opinion reversing the trial court's judgment and granting defendant Carosielli qualified immunity. In my judgment, the plaintiffs have established a legitimate expectation of privacy in the contents of their videotape, and any reasonable officer should have known that viewing the tape without a search warrant was a violation of clearly established law. I would affirm the district court's judgment.
 
 I.
 A.
 
 29
 Whether Carosielli's screening of the plaintiffs' videotape constituted a "search" under the Fourth Amendment hinges on whether it infringed on an expectation of privacy that society is prepared to recognize as reasonable. United States v. Chadwick, 433 U.S. 1, 7 (1977); United States v. Bailey, 628 F.2d 938, 941 (6th Cir.1980). In answering this question, the majority opinion focuses upon a point that I regard as immaterial. The question is not whether the plaintiffs had a legitimate expectation of privacy in a "public event," but whether, under the Fourth Amendment, the plaintiffs' expectation of privacy in the contents of their videotape--whatever they might be--is "legitimate or reasonable."
 
 
 30
 An expectation of privacy is "legitimate" for Fourth Amendment purposes if it is rooted in a "source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." Rakas v. Illinois, 439 U.S. 128, 143-144, n. 12 (1978). In this context, one of the most important factors to consider is whether an individual has a proprietary or possessory interest in the object searched, and whether the government intrusion is into an area where privacy legitimately can be expected. "Legitimate" in this context does not refer to a judicially prescribed societal or cultural value, but to the constitutional mandate that the government obtain a warrant to justify the search of an object in which an individual has asserted a protected proprietary interest as established by general social norms.
 
 
 31
 When a legitimate expectation of privacy is recognized, a search ordinarily must be conducted pursuant to a search warrant to survive constitutional scrutiny. United States v. Jacobsen, 466 U.S. 109, 120 n. 17 (1984). It matters not that the government may have probable cause to search an object, or that the search is reasonable, Jacobsen 466 U.S. at 114-20, or that the object is seized lawfully initially. Walter v. United States, 447 U.S. 649 (1980). "[W]arrantless searches of such effects are presumptively unreasonable." Jacobsen, 466 U.S. at 114; O'Connor v. Ortega, 480 U.S. 709 (1987).
 
 B.
 
 32
 It is unquestioned that the plaintiffs had a protectible possessory interest in their videotape; and indeed, the majority so states in holding that the warrantless seizure of the videotape violated the Fourth Amendment. Additionally, however, the plaintiffs had a "subjective" expectation of privacy in the contents of their personal property, which, in my view, was entirely legitimate.[1]
 
 
 33
 Regardless of the definition given to the word "legitimate" in this context, it can hardly be said that society does not recognize as legitimate the inherent privacy interests in the contents of a personal videotape. Indeed, the interest is so weighty that Congress has enacted a statute providing a presumption of privacy in "video tapes." See 42 U.S.C. § 2000aa, et seq. (Privacy Protection Act). Moreover, a personal videotape is an "effect" within the meaning of the Fourth Amendment, and one's privacy interest in it is no different than the privacy interest one has in the contents of a letter, a package, a suitcase, a footlocker, or closed containers of many kinds with respect to which the Supreme Court has repeatedly held that an owner has a legitimate expectation of privacy. See Jacobsen, 466 U.S. at 114, and cases cited therein. This rule is consistent with the notion that the Fourth Amendment protects a person's interest in an object and not the object itself. See Katz v. United States, 389 U.S. 347 (1967).
 
 
 34
 The subject matter of the video footage is of no consequence for Fourth Amendment analysis. Although an arrest might or might not qualify as a "public event," the subject matter of what the Rices were videotaping does not define the degree of protection from government intrusion their expectation of privacy receives. The government may not search the Rices' tape without a warrant anymore than it may search a newscast's tape of the arrest without a warrant. The implication of the majority's focus on the "arrest" is that the legitimate expectation of privacy one has in his or her "effects," "papers," and "things" that arguably contain the smallest trace of "public" information would be stripped of Fourth Amendment protection. The Fourth Amendment does not permit a constitutional distinction between "worthy" and "unworthy" containers.
 
 II.
 
 35
 Because I conclude that the right plaintiffs have asserted was clearly established at the time of Carosielli's search of their videotape, and that any reasonable officer would have known about it, I would affirm the judgment of the district court and deny him qualified immunity.
 
 
 36
 In reaching this determination, unlike the majority, I find Walter v. United States controlling. The Supreme Court was explicit in its holding: "[T]he unauthorized exhibition of the films constituted an unreasonable invasion of their owner's constitutionally protected interest in privacy. It was a search; there was no warrant; the owner had not consented; and there were no exigent circumstances." Walter, 447 U.S. at 654. The Court found reasonable the expectation of privacy in the pornographic films on the same rationale it had afforded Fourth Amendment protection to letters, sealed packages, and closed containers generally. Walter, 447 U.S. at 654-55, n. 5. That the right to privacy in the contents of the films in Walter was grounded on the First Amendment is immaterial for defining the scope of the Fourth Amendment's warrantless searches proscription. I know of no constitutional doctrine whereby the applicability of the Fourth Amendment hinges on the constitutional provision giving rise to right encroached upon.
 
 
 37
 In my judgment, any reasonable officer would have known that screening the Rices' videotape without a warrant was unreasonable in light of clearly established law. The competing considerations in this case militate only toward a finding of unreasonableness: the police had the tape securely within their control; the purported evidence for which they were searching was of minimal value; the Rices were guilty of no wrongdoing; it would have entailed no excessive law enforcement effort to obtain a proper judicial warrant to screen the tape; and there is a strong indication that Officer Carosielli was primarily interested in whether the tape recorded his "choke hold" on the arrestee's neck. Because the standard is an objective one and not dependent on what Carosielli knew at the time of the search, I find his screening of the tape unreasonable and thus violative of the plaintiffs' Fourth Amendment rights. See Terry v. Ohio, 392 U.S. 1, 21-22 (1968).
 
 
 38
 In this case, as in Walter, there "was a search; there was no warrant; the owner had not consented; and there were no exigent circumstances." I respectfully dissent.
 
 
 
 [1]
 Originally, the Rices claimed that Officer Carosielli violated their Fourth Amendment rights when officers seized the videotape without a warrant. However, the District Court granted Officer Carosielli's motion for summary judgment on the seizure claim on the basis that he did not personally seize the videotape, he did not supervise those who did seize the videotape, and his awareness or knowledge of any alleged wrongdoing could not alone subject him to liability
 
 
 [1]
 The two holdings of the majority opinion are difficult to reconcile. It is inconsistent, in my judgment, to hold that the videotape in question is private property that cannot be subjected to a warrantless seizure without violating the Fourth Amendment, but that the contents of such protected property can be searched with immunity. It seems incongruous for the government to be able to "search" an object without a warrant which it cannot "seize" without a warrant