Barbara SMITH and Joseph
Smith, Plaintiffs,

v.

CITY OF DETROIT, et al., Defendants.

No. CIV. 01–70740.

United States District Court,
E.D. Michigan,
Southern Division.

Jan. 7, 2003.

Ronnie E. Cromer, Jr., Detroit, MI, for plaintiff.

### MEMORANDUM OPINION AND ORDER

ANNA DIGGS TAYLOR, District Judge.

#### I.

During the twilight hours of September 7, 2000,[1] the Defendant Detroit Police Officers (the "Defendants") executed a search warrant at Barbara and Joseph Smith's (the "Smiths") home at 2241 Erskine in the City of Detroit. The search was intended to lead to the discovery of a quantity of cocaine. The likelihood of finding cocaine at that residence was partly based upon the information of an alleged confidential informant (the "C.I."), who allegedly had corroborated other information in the search warrant affidavit by purchasing cocaine from the Smith home.

At the time of the Defendants' arrival, the 81 year-old Mr. Smith was exiting his home and he was detained by the Defendants because he was believed to be the seller described in the search warrant affidavit.[2] Thereafter, the Defendants made their entry. It is further alleged that Mrs. Smith was ordered at gunpoint to sit down on her couch, and that Mr. Smith was forced into the house, which was then searched for drugs.

The search proved fruitless. The only item seized was Mr. Smith's gun. The Defendants left the residence without formally arresting, questioning or further detaining the Smiths.

The Smiths argue that the search warrant was invalid in the first place, because of its inaccurate description of the premises to be searched.[3] It is furthered asserted that Defendant P.O. William Harder ("Harder") had made intentional and material misrepresentations in his affidavit for the purpose of misleading the magistrate into believing that the alleged C.I., upon

---

1. The search took place sometime between 7:30 and 7:50 p.m. On September 7, 2000, the sun set at 7:56 p.m. *See* http://www.almanac.com/rise/results.

2. The description of the seller contained in the search warrant is: "# 1–B/M/50[years old], 5'6", 150 lbs, with gray beard and med complexion."

3. The search warrant described the residence to be searched as: "1½ story single family house, white frame dwelling with green trim, located on the north side of Erskine, the 4th house west of Chene, between Chene and Dubois located within the City of Detroit, County of Wayne, State of Michigan." The home of the Smiths, the actual home searched, was trimmed in blue, and is the 3rd house west of Chene. Also, the fourth house from Chene, 2237 Erskine, the Smiths' neighbor's house, allegedly, has been raided on several prior occasions.

whose testimony the affidavit claimed to be based, was reliable. The Smiths argue further that the alleged C.I. may not even have existed, and that the affidavit was largely a fabrication. The Defendants claim that two days prior to the execution of the search warrant, the C.I. met with Defendants Harder and Sgt. Joe Tucker to conduct a controlled narcotics purchase from the Smiths' residence; that this purchase did indeed take place and that the Defendants did conduct the raid on the proper residence.

As a result of the search, the Smiths claim assault and battery, deprivation of their Fourth Amendment rights to be free from unlawful searches and seizures under 42 U.S.C. § 1983, and false arrest and imprisonment. On September 5, 2002, Defendants filed this Motion for Summary Judgment.

## II.

The gravamen of a motion for summary judgment under Fed.R.Civ.P. 56(c) is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In resolving a motion under Rule 56(c), the court must "draw all justifiable inferences in favor of the non-moving party." *Winningham v. North Am. Resources Corp.*, 42 F.3d 981, 984 (6th Cir.

1994). Nevertheless, the existence of a mere scintilla of evidence in support of the nonmovant's position is insufficient; there must be evidence on which the jury could reasonably find for the nonmovant. *See Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. 2505 (1986). While there is no exact measure, "[a]t least one genuine issue of material fact must exist." *Summar ex rel. Summar v. Bennett*, 157 F.3d 1054, 1057 (6th Cir.1998). A fact is material if it will "affect the outcome of the suit under the governing law." *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. 2505. A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Conversely, where a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *See Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir.1993).

## III.

The Defendants implicitly concede that the searches and seizures complained of did in fact occur.[4] Explicitly, the officers contend that their actions are protected by their qualified good-faith immunity.[5]

An officer with a mistaken, but *reasonable* belief would still be afforded the protection of qualified immunity. *Saucier v. Katz, et al.*, 533 U.S. 194, 205, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (emphasis added).[6] An independent assessment of

---

4. Specifically, the Defendants do not deny that they detained Mr. Smith, entered the Smith home, and then searched the home. It is not clear whether the Defendants assert that the Smith home was the proper object of the search warrant.

5. Although not clear, it appears that the officers contend that, because these actions took place as a result of their mistake of fact under the circumstances, i.e., they thought that they were in fact executing the search warrant on

the correct residence, a reasonable officer in the Defendants' position would not understand that their actions were in fact violating the Smiths' clearly established constitutional rights.

6. With regard to the question of whether the search warrant was properly obtained, it is established that an officer applying for a warrant is entitled to qualified immunity if a reasonable officer could have believed that there was probable cause to support the ap-

reasonableness is a question of law for the trial judge to determine. *Garvie v. Jackson,* 845 F.2d 647, 649 (6th Cir.1988). Nonetheless, when "the legal question ... is completely dependent upon which view of the facts is accepted by the jury," the District Court cannot grant a defendant police officer immunity. *Brandenburg v. Cureton,* 882 F.2d 211, 215–16 (6th Cir. 1989).

When a defendant moves for summary judgment based on qualified immunity, the plaintiff must:

> 1) identify a clearly established right alleged to have been violated; and 2) establish that a reasonable officer in the defendant's position should have known that the conduct at issue was undertaken in violation of that right. *Johnson v. Estate of Laccheo,* 935 F.2d 109, 111 (6th Cir.1991).

The Smiths have alleged, either explicitly or implicitly, that the police officers violated their Fourth Amendment rights to be free from unreasonable searches and seizures and excessive force. Both rights are clearly established rights of which a reasonable official would know. *California v. Hodari D.,* 499 U.S. 621, 624–25, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991). The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures ...." U.S. CONST. amend. IV. From this bedrock of constitutional protection, it is well established that a warrantless search and seizure is unreasonable absent probable cause and exigent circumstances. *See Payton v. New York,* 445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); *United States v. Radka,* 904 F.2d 357, 360 (6th Cir.1990).

Taking the Smiths' allegations of fact that the search warrant was improperly obtained and/or executed and all reasonable inferences therefrom as true, as we must do in reviewing a summary judgment motion, they have sufficiently alleged violations of their Fourth Amendment rights. The Smiths allege that the entry to their home and subsequent search and seizures were done without a warrant as the warrant possessed by the officers only cited the "white frame dwelling with green trim, located on the north side of Erskine, the 4th house west of Chene." No exceptions to the warrant requirement apply with respect to the search of the Smith home. If this initial allegation of fact that the search warrant described a distinctly different house is true, then it is reasonable to infer that the officers entered the Smith residence without authority. Moreover, assuming an initial illegal entry, the Smiths had a clear right to be free from any subsequent illegal search and seizure whatsoever. Consequently, it must be concluded that, as an initial matter, the Smiths have sufficiently alleged and supported violations of their clearly established constitutional rights.

The Smiths further maintain that reasonable efforts were not used to identify their residence in the affidavit, and that this initial failure then led to problems in the search warrant itself, and finally culminated in the execution of a defective warrant on the wrong home. The wrongness may turn out to lie in the original misidentification or in the subsequent effectuation of the search warrant, but in either case the search would be unlawful.

The Fourth Amendment demands particularity: it "require[s] a description

---

plication. *Malley v. Briggs,* 475 U.S. 335, 344–45, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). However, for the purposes of this Motion it is not necessary to reach the validity

of the warrant, but only to determine whether there is a genuine issue of material fact as to the reasonableness of the *execution* of the search warrant.

which particularly points to a definitely ascertainable place [so] as to exclude all others." *United States v. Gahagan,* 865 F.2d 1490, 1496 (6th Cir.1989). To test the sufficiency of a warrant, as to this precondition, the warrant must be examined to determine:

"(1) whether the place to be searched is described with sufficient particularity as to enable the executing officers to locate and identify the premises with reasonable effort; and (2) whether there is a reasonable probability that some other premises may be mistakenly searched". *Id.* at 1497.

If the Smith home and Mr. Smith were the intended targets, then there are facial flaws in the search warrant. First, their home is the third from the corner; the search warrant states "the fourth house from the corner." Second, their home is trimmed in blue; the search warrant states the house to be searched is trimmed in green. Third, the Smiths allege that their neighbor's house is a reputed drug haven. This fact, if true and unaccounted for, could be a potential source of confusion. Next, it is contended that a number of either sham or unreasonable efforts were undertaken by the officers in their conduct as it relates to the alleged C.I., and the obtaining of the search warrant. Finally, the subject individual, who had made the alleged sale, was fifty years old and Mr. Smith is eighty-one.

The issue to be resolved is whether a reasonable officer would have known that the warrant in question did not authorize their entry into the Smith home. The Sixth Circuit has established that summary judgment is inappropriate where, as here, there are contentious factual disputes over the reasonableness of the offi-

cer's conduct. *See Sova v. City of Mount Pleasant, et al.,* 142 F.3d 898, 903 (6th Cir.1998) (the Court of Appeals reversed the District Courts summary judgment order, stating that the lower court had improperly disregarded the factual disputes underlying the plaintiffs' claims).

In *Pray v. City of Sandusky,* 49 F.3d 1154, 1156 (6th Cir.1995), an elderly married couple brought a civil rights suit under 42 U.S.C. § 1983 against various police officers and a municipality alleging an illegal search and seizure and excessive force in violation of the Fourth Amendment. There, the police gathered information for a warrant to search the upper flat of a duplex, and arrived at the residence to execute that warrant.[7] The plaintiffs' home was on the lower level of a duplex containing a common vestibule with one door opening immediately to a flight of ascending stairs by which the upper flat is reached, and one door providing a back entrance into the lower flat occupied by the Prays. Neither door in the vestibule was identified by number or name. The police knocked on the "obvious" door and, after receiving no immediate response, forced the door open; the "obvious" door turned out to be the door leading to the Pray home. The officers then swarmed through the apartment; they confronted Mr. Pray at gunpoint, and pushed him to the floor; another officer discovered Mrs. Pray and pushed her to the ground; the officers remained for about 5 minutes securing and searching the residence. After finding nothing, the officers proceeded to the upper flat which was the correct object of the search warrant. *Id.* at 1157.

The individual defendants relied, in their motion for summary judgment, in part on

---

7. This was the second search warrant. A first warrant for the upper flat was secured and executed in December 1989. Six weeks later, the police secured a second warrant for the upper flat; at least one of the officers at the first raid was also present at the second raid. *Id.* at 1156.

the affirmative defense of qualified immunity. The Sixth Circuit affirmed the district court's denial of the motion based on a finding that genuine issues of material fact remained with respect to the defense of qualified immunity. *Id.* The *Pray* court did state that "a reasonable officer in the defendants' position could have believed that he was initially entering the correct residence described on the warrant."[8] Therefore, the initial entry was protected by the veil of qualified immunity and summary judgment was granted in the defendants' favor as to the issue of entry alone. *Id.*

■ In contradistinction to the ambiguous doors in *Pray*, however, there were obvious distinctions between the home described in the warrant (green trim, 4th house) and the Smith home (blue trim, 3rd house). Moreover, in *Pray* the court emphasized that the problem of identification was exacerbated by the "dark" conditions. Here, the search took place between 7:30 p.m. and 7:50 p.m., and the sun did not set until 7:56 p.m., meaning there may have been sufficient light to render the present mistake unreasonable. Finally, in *Pray* the court placed special weight on time pressures constraining the police officer's judgment once they entered the vestibule. *Id.* at 1156. In the present case, there is no suggestion that a comparable constraint existed. Because the facts of this case go beyond the pale of reasonableness described in *Pray*, this Court must deny the Defendants' motion for summary judgment as to the reasonableness of the initial entry.[9] Accordingly, the Court declines to hold that the mistaken initial entry while executing a search warrant under the circumstances of this case is reasonable as a matter of law.[10]

Any search or seizure that occurred while the officers were under the mistaken but reasonable belief that they were in fact executing the warrant at the correct residence would be protected by qualified immunity. Conversely, "any search or seizure that took place after the officers knew or reasonably should have known that they were in the wrong residence would no longer be protected by qualified immunity." *Pray* at 1159.[11]

■ As in *Pray*, we must conclude that a genuine issue of material fact remains to determine which, if any, of the illegal searches and seizures took place *after* the officers discovered or reasonably should have discovered that they were in fact at the wrong residence. The trier of fact must determine, "based on the credibility of the evidence before it, at what point the officers knew or reasonably should have known they were at the wrong residence, and to determine what searches and seizures occurred after that." *Pray* at 1160.

8. "At the time the officers entered the Pray home, it was dark, vision was poor, and any delay could have been potentially detrimental to an arrest of Giles and seizure of evidence. The circumstances surrounding the search six weeks earlier, however, were significantly different—it was not a raid, it was daylight, and Giles' door leading to the stairs was open to the officers." *Pray* at 1157.

9. If this Court were, in the alternative, to view the Plaintiff's response as a cross-motion for summary judgment, then the Plaintiff might be entitled to summary judgment as to the unreasonableness of the initial warrantless entry. If that were the case, then any further exertion of force would be considered, as a matter of law, unreasonable.

10. However, the Court does not hold that the initial entry was unreasonable as a matter of law, but instead reserves the question as one to be determined after hearing the facts of the case at trial.

11. "A 'reasonable' officer would know that such warrantless searches and seizures would violate the plaintiffs' constitutional rights." *Pray* at 1159 *(citing to Castro v. United States, 34 F.3d 106 (2d Cir.1994))*.

Thus, while "qualified immunity is a question of law and should be resolved at the earliest possible moment ... summary judgment is not appropriate if there are factual disputes involving an issue on which the question of immunity turns." *Id.; Poe v. Haydon*, 853 F.2d 418, 426 (6th Cir.1988), *cert. denied*, 488 U.S. 1007, 109 S.Ct. 788, 102 L.Ed.2d 780 (1989).

The assault and battery claim is ancillary to and dependant upon an excessive force claim. As such, it will turn on the reasonableness of the force used.[12] However, if the original entry is found to be unreasonable, then *any* subsequent force would, as a matter of law, be excessive.

█ The Supreme Court has specifically held that "a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search warrant is conducted." *Michigan v. Summers*, 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981). In so holding, the *Summers* court concluded that:

> "If the evidence that a citizen's residence is harboring contraband is sufficient to persuade a judicial officer that an invasion of the citizen's privacy is justified, it is constitutionally reasonable to require that citizen to remain while officers of the law execute a valid warrant to search his house." *Id.* at 704–05, 101 S.Ct. 2587.

As in *Summers*, Mr. Smith was detained as he was leaving his premises and Detroit Police Officers were arriving to execute a search warrant. However, a *Summers* analysis is not appropriate. Rather, a false arrest and imprisonment analysis under these facts would follow the same course as the assault and battery claim.

Accordingly, because genuine issues of material fact remain as to the reasonableness of the Defendants' seizure of Mr. Smith as the "seller" in the search warrant, the summary judgment motion as to this issue must be denied. This court cannot, on this state of the record, hold that any of the individuals are entitled to qualified immunity for their actions, that evening.

## IV.

█ Municipalities are not entitled to qualified immunity. *Ruby v. City of Portsmouth*, 39 Fed. Appx. 284, 285 (6th Cir. 2002). In holding that a municipality could be sued under 42 U.S.C. § 1983, the Supreme Court stated that:

> "[A] local government may not be sued under [§ 1983] for an injury inflicted solely by its employees or agents. Instead, it is when [the] execution of a government's policy or custom ... inflicts the injury that the government as an entity is responsible for ..." *Monell v. Dept. of Social Services*, 426 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

Because a municipality can be liable under § 1983 only where its policies are "the moving force behind the constitutional violation," *Canton v. Harris*, 489 U.S. 378, 388–89, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) a plaintiff is generally required to show a municipal policy or custom that caused the violation of his constitutional rights. *Monell* at 694, 98 S.Ct. 2018. The factual standard for finding a policy of deliberate indifference is as follows:

> "Where a § 1983 plaintiff can establish that the facts available to city policymakers put them on actual or constructive notice that the particular omission is

---

12. *See Graham, supra,* at 395 (holding that all claims alleging "that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard ....").

 

substantially certain to result in the violation of the constitutional rights of their citizens, the dictates of *Monell* are satisfied. Only then can it be said that the municipality has made a deliberate choice to follow a course of action ... from among various alternatives." *Id.* at 396, 109 S.Ct. 1197.

■ In the present case, the Smiths allege that at least three of the Defendant police officers had previously been named defendants in other civil suits alleging false arrest, false imprisonment, and illegal search and seizure as a result of raiding the wrong house. Coupled with the allegations that no additional training was giving to these officers,[13] this evidence *may* allow for an inference that the City of Detroit was deliberately indifferent to the safety of its citizens. Therefore, summary judgment as to municipal liability is denied.

## V.

The Smiths have asserted that "March 28, 2002, was the deadline for any motions for summary judgment to be filed in this matter," and, therefore, this Court should deny the Motion for summary judgment as untimely. This argument is without merit. According to Fed.R.Civ.P. 56(b):

> A party against whom a claim ... is asserted ... may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof.

For the foregoing reasons,

---

13. In *Canton* the Court held that inadequate training can serve as a basis for municipal liability under § 1983 "where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." 489 U.S. at 388, 109 S.Ct. 1197. Yet, the Smiths have failed to produced any evidence that the Police Department does not train its officers in the execution of search warrants, or the use of force.

IT IS ORDERED that the Defendants' summary judgment motion is hereby DENIED in its entirety.

IT IS SO ORDERED.

*See Matthews v. Jones,* 35 F.3d 1046, 1049–50 (6th Cir.1994). On facts such as these, summary judgment is appropriate on a claim that the Detroit Police Department has failed to train its officers as an initial matter. *See Littleton v. City of Detroit,* 2002 WL 31008837 *4 (E.D.Mich.2002). This is, however, separate from a claim that the Defendants were not properly given additional training; summary judgment is denied as to this claim.