**Angela Fay JOHNSON, Plaintiff,**

v.

**The CITY OF DETROIT, Isaiah McKinnon, Cristen Stopczynski, John Fisette, and Neil Wells, and Janet Jeczen, and John Doe I–V, Jointly and Severally, Defendants.**

**Civil Action No. 95–40300.**

United States District Court,
E.D. Michigan,
Southern Division.

Oct. 30, 1996.

Marc R. Lakin, Detroit, MI, for plaintiff.

Brian P. Hutcheon, Assistant Corporation Counsel, Detroit, MI, for defendants City of Detroit and Isaiah McKinnon.

### ORDER GRANTING DEFENDANT CITY OF DETROIT'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS WELL'S AND FISETTE'S MOTION FOR SUMMARY JUDGMENT.

GADOLA, District Judge.

On February 13, 1995, the plaintiff, Angela Fay Johnson, filed this action, asserting state law claims of negligence, assault and intentional infliction of emotional distress and seeking damages for alleged violations of her constitutional right to be free from the use of excessive force under the Fourth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983. On March 2, 1995, this court declined to exercise pendent jurisdiction over

the state law claims asserted in Johnson's complaint and dismissed them without prejudice.[1] On January 12, 1996, defendant City of Detroit filed its motion for summary judgment on Johnson's section 1983 claim pursuant to Federal Rule of Civil Procedure 56(c). On January 16, 1996, defendants John Fisette and Neil Wells filed their respective motions for summary judgment.[2] On September 9, 1996, defendant Janet Jeczen filed her motion for summary judgment, asserting arguments similar to the ones presented by defendants Fisette and Wells.

This court has reviewed the record in this case, the submissions of the parties and the issues raised by this submissions. Pursuant to Local Rule 7.1(e)(2) (E.D.Mich. Nov. 7, 1994), this court has concluded that oral argument is not necessary to the determination of these motions. After an explication of the factual background and the standard of review, this court will address the defendants' motions seriatim. For the reasons stated below, this court will deny defendants Wells, Jeczen and Fisette's motions for summary judgment and grant the City of Detroit's motion for summary judgment.

## I. Factual Background

On April 11, 1994, at approximately 2:30 a.m., defendants John Fisette, Janet Jeczen, Cristen Stopczynski[3] and Neil Wells, all police officers for the City of Detroit, approached a house at 15374 Fairfield in the City of Detroit. Defendants Jeczen and Wells were in full uniform and drove a marked police cruiser while defendants Fisette and Stopczynski were on a "plainclothes" undercover patrol in an unmarked car. The house was commonly known to the officers to be a place where drugs were bought and sold. Officer Wells became suspicious that the house was being used, or that persons may have been in the house that night, because the front door had been sealed up since the previous time he had observed the house. The officers decided to conduct a search of the premises and the house.

As the officers approached the house, the plaintiff, Angela Fay Johnson, an occupant of the house at the time, observed the officers using flash lights to peer into the house. Johnson submits that the officers became aware of her presence in the house at that time and that she heard the officers comment that someone was in the house. Specifically, Johnson contends that she heard at least one of the male officers yell "we know you are in here" and "when we find you we're going to kick your ass."

When the officers began forcibly entering through the front door, Johnson states that she feared that the officers were there to arrest her. Johnson did not own the house nor did she have permission to be there from the owner. Although she maintains that she was homeless, Johnson also readily admits that she was selling drugs out of the house before the officers arrived. As the officers entered the front door of house, Johnson quietly crept up the stairs to the second floor where she hid behind a cabinet.

Once in the house, the officers conducted a search of the first and second floors. Officers Wells and Jeczen searched the second floor while officers Fisette and Stopczynski searched the first floor. Johnson submits that, during his search of the second floor, officer Wells tore down the curtains from the three windows at the front of the house and broke out the glass from those windows. She also maintains that the officers continued to yell and threaten her during their search of the house. Although the facts surrounding the purpose and the extent of the search are not entirely clear, it is undisputed that

1. On April 18, 1995, this court dismissed sua sponte defendant Isaiah McKinnon from this action on the ground that Johnson's complaint failed to adequately allege any personal involvement of McKinnon which could support liability under section 1983.

2. On April 11, 1996, defendant Fisette filed a concurrence in the relief requested in Wells' motion for summary judgment. To the extent that Fisette's claims in concurrence with Wells differ from the arguments presented in his original motion, this court's discussion of Wells' motion will be equally applicable to Fisette's claims in concurrence.

3. According to the motion for summary judgment submitted by defendant Fisette, defendant Stopczynski committed suicide sometime after the events occurring on April 11, 1994, apparently for reasons unrelated to the issues involved in this case.

the officers did not apprehend Johnson during their search of the premises.

When officers Wells and Jeczen returned to the first floor of the house, the officers had some discussion in the kitchen. The contents of that discussion are unclear from the record, but it appears that, at some point, officer Jeczen ignited a piece of paper and threw it on the floor. Reproached by officer Wells, officer Jeczen stomped out the flaming piece of paper. At this point, defendants Fisette and Stopczynski abandoned the search and exited the house.

As defendant Wells proceeded to exit the front door, he turned around to determine whether officer Jeczen was behind him. He acknowledges that, as he stood in the doorway, he witnessed defendant Jeczen use a lighter to ignite a tag on a couch located on the first floor. Defendant Wells also acknowledges that he "panicked" and made no physical attempt to stop defendant Jeczen from lighting the tag. Defendants Fisette and Stopczynski had reached their unmarked police car by the time Jeczen ignited the couch. Before defendants Wells and Jeczen descended from the front porch of the house, defendant Stopczynski approached Wells who immediately directed her to leave the house. Defendant Stopczynski turned and apparently noticed the fire, at which point she exclaimed, "Oh my God!" and quickly returned to the unmarked car. Officer Wells then shouted for the other officers to "get the fuck out of here." The officers hurriedly left the scene.

As the officers drove away from the house, defendant Wells admits that he noticed a "glow" coming from the house. None of the defendants made any attempts to alert the fire department. Nor did the officers prepare an incident report detailing the events that had transpired. In fact, the record indicates that none of the defendants made any formal statements about the events of April 11, 1994 until the following September, when defendant Wells was questioned by the internal affairs section of the Detroit Police Department in connection with a criminal investigation of defendant Fisette for willful neglect of duty on that night. The fire was reported by the neighbor who lived in the house across the street, Ms. Carol Komoke. Firefighters from the Detroit Police Department arrived at the house at approximately 2:47 a.m. and extinguished the fire by 3:30 a.m.

Unaware of what had transpired on the floor below, Johnson remained in hiding some time after she heard the officers leave, still fearing she would be arrested. When she finally realized that a fire had erupted on the first floor, Johnson attempted to go downstairs. Unable to safely exit from the first floor, Johnson returned to the second floor and jumped from a second story window to escape the blaze. As a result of the jump, Johnson sprained her ankle and knocked loose a tooth. Johnson also sustained injuries including a sore back, recurring nightmares and a constant ringing in her ears. Johnson did not seek medical attention until a week after incident.

When the officer defendants arrived at the 12th precinct police station, defendant Wells approached defendants Fisette and Stopczynski's unmarked car. According to defendant Wells, defendant Fisette asked "did you tell that bitch to do that?" Although he claims he did not understand what defendant Fisette was referring to, defendant Wells replied "no." Defendant Fisette denies having made this statement. Moreover, the officer defendants maintain that there was absolutely no other discussion among the officers concerning the events of April 11, 1994 until several months later when they were notified of the investigation by the Detroit Police Department. Shortly after this brief exchange, defendants Wells and Jeczen returned to the neighborhood to find that firefighters from the police department had arrived at the house. Defendants Wells and Jeczen did not stop at the location.

As indicated above, Johnson filed this action pursuant to 42 U.S.C. § 1983 on February 13, 1995. Her complaint alleges that the officers' actions on April 11, 1994 deprived her of her constitutional right to be free from the use of excessive force guaranteed by the Fourth Amendment, incorporated through the Fourteenth Amendment. Johnson's complaint also asserts that the City of Detroit is

responsible for the actions of the officers, under the theory of municipal liability articulated in *Monell v. Department of Social Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), because it failed to properly train the officer defendants to prevent arson or to report the wrongdoing of a fellow officer (Complaint at ¶¶ 16, 21, 24).

As indicated above, the officer defendants have brought several related motions for summary judgment. Briefly, all three of officer defendants contend that their actions on April 11, 1994 did not amount to a deprivation of a constitutional right, because they never discovered Johnson or took her into custody. Moreover, the officers generally assert that they are entitled to qualified immunity because they were unaware that Johnson was in the house at the time of the fire. Defendant Fisette further asserts that he is not liable for any alleged excessive force violation, because Johnson has submitted no evidence indicating that he was aware of, or involved in, the burning of the house.

In its motion, the City of Detroit contends that it is entitled to summary judgment on Johnson's municipal liability claim for failing to adequately train its officers, because Johnson has produced no evidence indicating that the officers' actions complained of were taken pursuant to a custom, policy or practice of the City of Detroit. Moreover, the City submits that Johnson's failure to train claims must fail as a matter of law, because Johnson has failed to adduce evidence indicating that any failure to train reflects a "deliberate" or "conscious" choice, amounting to a deliberate indifference to Johnson's rights by the City. Accordingly, the City maintains, Johnson cannot support a claim for municipal liability.

## II. Standard of Review

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the exis-

tence of an essential element of the non-moving party's case on which the non-moving party would bear the burden of proof at trial. *Martin v. Ohio Turnpike Commission*, 968 F.2d 606, 608 (6th Cir.1992); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In considering a motion for summary judgment, this court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the non-moving party. *60 Ivy Street Corporation v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987). This court is not required or permitted, however, to judge the evidence or make findings of fact. *Id.* at 1435–36. The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *Id.* at 1435.

A fact is "material" for purposes of summary judgment where proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984). In other words, the disputed fact must be one which might affect outcome of the suit under the substantive law controlling the issue. *Henson v. National Aeronautics and Space Administration*, 14 F.3d 1143, 1148 (6th Cir.1994). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* Accordingly, where a reasonable jury could not find that the non-moving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Feliciano v. City of Cleveland*, 988 F.2d 649 (6th Cir. 1993).

Once the moving party carries its initial burden of demonstrating that no genuine issues of material fact are in dispute, the burden shifts to the non-moving party to present specific facts to prove that there is a genuine issue for trial. To create a genuine issue of material fact, the non-moving party must present more than just some evidence of a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986):

There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the [non-moving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted); *see also Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Consequently, the non-moving party must do more than raise some doubt as to the existence of a fact; the non-moving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.,* 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd,* 929 F.2d 701 (6th Cir.1991).

### III. Analysis

### A. Defendants Wells, Fisette and Jeczen's Motions for Summary Judgment

In support of their motions for summary judgment, the officer defendants offer several similar arguments. Although the motions differ in style and in their accounts of the various officers' involvement in the events of April 11, 1994, the disposition of these motions ultimately depends upon the resolution of several central issues. Accordingly, this court has decided for the sake of clarity to organize this discussion according to the issues raised in the motions, instead of addressing the individual claims of each officer separately. This court will first outline the issues and arguments raised by the officer defendants and then analyze those claims in turn.

In their motions for summary judgment, the officer defendants contend that they are entitled to summary judgment because they did not know that Johnson was in the house at the time of the fire and did not arrest or take Johnson into custody (and thereby seize) on April 11, 1994. The officers submit that an essential element of an section 1983 excessive force claim based upon the Fourth Amendment is that the officers be aware of the person to be searched or seized at the time of the conduct.[4] Because Johnson has failed to adduce evidence sufficient to prove that the officers knew she was present in the house, or that they intended to flush her out by setting the house on fire, the officers assert, Johnson cannot demonstrate that the officers' alleged actions constituted a seizure for purposes of the Fourth Amendment and, consequently, her Fourth Amendment excessive force claim cannot survive a motion for summary judgment.

The officer defendants also claim that summary judgment is appropriate, because Johnson has failed to demonstrate that the officers are not entitled to qualified immunity for their actions on April 11, 1994. The officer defendants submit that, under the "public duty" doctrine expounded by the Michigan courts,[5] they owed no duty to Johnson sufficient to justify holding them liable for damages under section 1983, because they were unaware that Johnson was in the house at the time the fire occurred. Accordingly, the officer defendants conclude, their conduct was not unreasonable and Johnson's Fourth Amendment claim must fail on the basis of qualified immunity.

Finally, in his January 16, 1996 motion, defendant Fisette contends that he is entitled to summary judgment on the ground of qualified immunity, because Johnson has produced no evidence to indicate the defendant Fisette was aware of, or involved in, the setting of the fire. In his affidavit, defendant Fisette submits that he did not witness Jec-

---

4. This position is best summarized in defendant Wells's reply brief:

Plain and simple, Defendant Wells did not use excessive force in violation of Plaintiff's 4th Amendment rights. This is especially true since an officer, in order to effectuate a search or seizure, needs to have a person of which that officer is aware to be searched or seized for any 4th Amendment rights to kick in. Defendant Wells's April 11, 1996 Reply Brief at 3.

5. According to the officer defendants, the "public duty" doctrine provides that, because a public official is deemed to owe a duty to the public in general, he does not owe a duty to any specific individual unless a special relationship exists between the individual and the officer. *See White v. Humbert,* 206 Mich.App. 459, 522 N.W.2d 681 (1994).

zen light the fire and that he was completely unaware that it occurred until several months later when the internal investigation commenced. Defendant Fisette also denies that he ever asked defendant Wells whether Wells had instructed Jeczen to light the fire and states that defendant Wells's testimony about this question is "speculative" and insufficient to establish that Fisette had any knowledge of or involvement with the setting of the fire. Because Johnson cannot specifically refute his denials, defendant Fisette concludes that he is entitled to summary judgment on the grounds of qualified immunity.

Upon review of the submissions and the relevant authorities, this court finds that the officer defendants' arguments in support of their motions for summary judgment not only misapprehend the nature of the standard of review under Federal Rule of Civil Procedure 56, but also misstate the principles of law governing section 1983 claims based upon allegations of excessive force under the Fourth Amendment. This court finds that summary judgment is inappropriate because the intentional burning of the house at 15374 Fairfield constitutes a seizure within the meaning of the Fourth Amendment, irrespective of the officers' knowledge of Johnson's presence in the house. This court also finds that summary judgment is unwarranted because genuine issues of fact exist as to whether the officer defendants' actions were objectively reasonable under the Fourth Amendment or for purposes of qualified immunity. This court will address these issues and elaborate upon these findings below.

1. **Whether the intentional burning of the house constitutes an unreasonable seizure under the Fourth Amendment for purposes of maintaining an excessive force claim under section 1983.**

Johnson's complaint alleges that intentional burning of the house at 15374 Fairfield, which forced her to jump from a second story window to escape, deprived her of her right to be free from the use of excessive force under the Fourth and Fourteenth Amendments. (Complaint at ¶ 19). The Fourth Amendment, which grants persons the right to be free from illegal searches and seizures, provides:

> The right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated....

■ In *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1990), the Supreme Court held that "*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Id.* at 395, 109 S.Ct. at 1871 (emphasis in original). Under this standard, a seizure occurs when there is an unreasonable governmental termination of freedom of movement through means intentionally applied. *Brower v. County of Inyo,* 489 U.S. 593, 597, 109 S.Ct. 1378, 1381–82, 103 L.Ed.2d 628 (1989); *Terry v. Ohio,* 392 U.S. 1, 19, 88 S.Ct. 1868, 1878–79, 20 L.Ed.2d 889 (1968) (holding that a seizure triggering Fourth Amendment protection occurs only when government actors have, "by means of force or show of authority ... in some way restrained the liberty of a citizen."). Although the term "seizure" may not be applied to an unknowing or unintentional act, a seizure may occur even when an unintended person or thing is the object of a willful detention or taking. *Brower,* 489 U.S. at 596, 109 S.Ct. at 1381. In this regard, it is enough for a seizure that a person's liberty be restrained "by the very instrumentality set in motion or put in place in order to achieve that result." *Id.* at 599, 109 S.Ct. at 1382.

■ Application of this standard to the present case demonstrates that the intentional burning of the house on April 11, 1994 constituted a seizure for purposes of the Fourth Amendment. The record clearly indicates, and the parties do not dispute, that the fire prevented Johnson from exiting the house from the ground floor and forced her to jump from an upstairs window. Because the fire effectively restrained Johnson's liberty to exit the house without peril or injury,

the intentional setting of the fire was tantamount to the "intentional acquisition of physical control" required for a seizure under the Fourth Amendment, irrespective of whether the officers contemplated or intended that Johnson be in the house. *Id.* at 596, 109 S.Ct. at 1381; *see Hill v. California,* 401 U.S. 797, 802–05, 91 S.Ct. 1106, 1110–11, 28 L.Ed.2d 484 (1971).[6] Accordingly, for purposes of determining whether the intentional setting of the fire constituted a seizure under the Fourth Amendment, it is irrelevant that the officers did not formally take Johnson into custody or that they deny having any knowledge of Johnson's presence in the house. These arguments simply do not justify granting the officer defendants' motions for summary judgment.

■■■ This conclusion does not end the inquiry, however, because the conduct complained of must not only constitute a seizure, it must also be unreasonable to run afoul of the Fourth Amendment. To determine whether the alleged seizure in this case was unreasonable, this court must evaluate the officer defendants' conduct under the objective reasonableness standard set forth by the Supreme Court in *Tennessee v. Garner,* 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985) (noting that, because § 1983 does not by itself create any substantive rights, the standard for evaluating alleged violations must be determined by the particular constitutional provision at issue). This court must carefully balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989). In making this determination, this court should consider the totality of the circumstances, including, but not limited to, the need for the use of force, the degree of force applied, and the injuries inflicted. *Johnson v. Glick,* 481 F.2d 1028, 1033 (2nd Cir.1973). Moreover, this

court must make this determination "without regard to [the officers'] underlying intent or motivation." *Graham,* at 397, 109 S.Ct. at 1872.

Review of the authorities and the evidence adduced by the parties confirms that summary judgment is not warranted, because genuine issues of fact exist concerning whether the officers' actions on April 11, 1994 were objectively reasonable. This court does not agree that Johnson has failed to submit evidence sufficient to support her excessive force claim. To the contrary, there is ample evidence in the record to substantiate Johnson's allegation concerning the officer defendants' respective involvement in the search and the setting of the fire. It should be noted that Johnson does not have to prove her case to survive a motion for summary judgment. She must merely produce evidence which, when construed in a light most favorable to her claims, demonstrates the existence of genuine issues of material fact. Johnson has met this burden.

Here, the evidence reveals that the officer defendants were present at 15374 Fairfield on April 11, 1994; that they conducted a search of the premises because they suspected the house was occupied; that one of the officers intentionally ignited the couch on the first floor of the house; that at least two other officers witnessed this; that the officers immediately fled the scene at the profane behest of defendant Wells; and that the officers did not report or document the events of that evening until several months later. Construed in a light most favorable to Johnson, this evidence suffices to create a question of fact as to whether the officers' actions were objectively reasonable under the circumstances. It simply is no answer to say that, because Johnson did not directly witness all of the misconduct alleged in her complaint, her version of the events of April 11, 1994 should be rejected in favor of the

---

6. This court notes that, even if the evidence shows that defendants Fisette and Wells did not actively participate in the setting of the fire, they may nonetheless be held directly liable for the seizure under section 1983. *See Bruner v. Duna-*

*way,* 684 F.2d 422, 426 (6th Cir.1982) (recognizing that, for purposes of maintaining a section 1983 claim, it is not necessary for a plaintiff to demonstrate that a police officer actively partici-

officer defendants' accounts of the events.[7] Summary judgment is inappropriate.

Summary judgment is also inappropriate because genuine issues of fact exist as to whether the officer defendants knew that Johnson was in the house at the time of the fire. Johnson's affidavit asserts that the officers became aware of her presence in the house while they were peering into the house with their flashlights and that they decided to enter the house because they saw her. Johnson also submits that the officers continually shouted that they knew she was there and threatened to "kick her ass" when they found her. Although the officer defendants generally deny that they knew Johnson was present, these denials only serve to create a question concerning the events that occurred on that night.

Ultimately, this court cannot conclude, as a matter of law, which version of the events of April 11, 1994 is more accurate because that conclusion could only be reached by assessing the credibility of the parties' respective claims. Such credibility determinations are reserved for the trier of fact. *Harris v. City of Akron*, 20 F.3d 1396, 1403 (6th Cir.1994) (noting that, on summary judgment the judge "may not make credibility determinations or weigh the evidence."); *Mechmet v. Four Seasons Hotels, Ltd.*, 825 F.2d 1173 (7th Cir.1987) (emphasizing that "it is not a proper office of summary judgment to resolve questions of credibility except in the most extreme cases."). Accordingly, to the extent that the question of whether the officer defendants were aware of Johnson's presence in the house when the fire started

bears upon the objective reasonableness of their actions, summary judgment is inappropriate because genuine issues exist as to whether, and/or which of, the officers knew Johnson was in the house at the time of the fire. *Jackson v. Hoylman*, 933 F.2d 401, 403 (6th Cir.1991) (reaffirming the principle that summary judgment is improper in an excessive force claim when it is not possible for the district court to assess the objective reasonableness of a particular use of force without evaluating the credibility of the parties' evidence or choosing between sharply different factual accounts).

2. **Whether any of the officer defendants are entitled to qualified immunity for their actions on April 11, 1994.**

Government officials performing discretionary functions are afforded qualified immunity shielding them from civil liability under section 1983 if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Pray v. City of Sandusky*, 49 F.3d 1154, 1157 (6th Cir.1995). When a defendant moves for summary judgment based upon qualified immunity, the plaintiff must overcome two obstacles. First, the plaintiff must set forth allegations that demonstrate that the defendant official violated a clearly established right. Second, the plaintiff must present evidence sufficient to establish that a reasonable official in the defendant's position should have known that the conduct at issue was undertaken in viola-

---

pated in the violation of the plaintiff's constitutional rights).

7. Indeed, this court is nonplussed by the officer defendants' cavalier and erroneous assumption that their allegations concerning the events of April 11, 1994 justify granting their motions for summary judgment:

Upon information and belief, no citizen was in the house and Ms. Johnson herself did not witness any alleged misconduct. Therefore, it is the police officers who can offer the best evidence as to who would have observed or had knowledge of any alleged arson. Defendant Fisette's January 16, 1996 Motion for Summary Judgment, at 6.

It may very well be the case, and this court expresses no opinion on this issue, that the officers were in a better position to witness and describe the events of April 11, 1994. This would not, however, justify summary judgment for several reasons. First, even though the officers enjoy a virtual monopoly on the information in this case, that does not lead ineluctably to the conclusion that their evidence is better or more accurate than Johnson's. Second, and more important, evaluation of the **quality** evidence is inappropriate at the summary judgment stage, as such evaluations are reserved for the trier of fact, not this court. Finally, this argument does not refute the fact that Johnson has adduced sufficient evidence to support her excessive force claim.

tion of that right. *Pray,* 49 F.3d at 1158; *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987) ("The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."). Although a plaintiff bears the burden of presenting evidence to overcome these obstacles, a defendant, as the movant in a motion for summary judgment, must show that no genuine issues of material fact remain that would undermine a claim of qualified immunity. *Adams v. Metiva,* 31 F.3d 375, 386 (6th Cir.1994).

As discussed more fully above, the officer defendants claim that they are entitled to qualified immunity because, under the "public duty" doctrine expounded by the Michigan courts, they owed no duty to Johnson sufficient to justify holding them liable for damages under section 1983, and because they did not know that Johnson was in the house at the time the fire occurred. Additionally, defendant Fisette contends that he is entitled to qualified immunity, because Johnson has produced no evidence to indicate that defendant Fisette was aware of, or involved in, the setting of the fire.

■ Initially, this court rejects categorically the officer defendants' suggestion that the "public duty" doctrine of Michigan tort law has any bearing on the issues raised in this case. The defendants should be reminded that Johnson's state law claims are not presently before this court, as they were dismissed without prejudice on March 2, 1995. More importantly, the defendants should note that this action involves alleged deprivations of federal constitutional rights under section 1983 which are controlled by federal law, not Michigan tort law. This court has discovered no authority, and the defendants have failed to cite any federal cases, in which the Michigan common law "public duty" doctrine has been applied to analyze Fourth Amendment claims under section 1983. Moreover, this court is not convinced that the "public duty" doctrine is consistent with the applicable federal precedent or that it would adequately vindicate the interests protected by the Fourth Amendment or section 1983. *See e.g. Masel v.*

*Barrett,* 707 F.Supp. 4, 7 (D.D.C.1989) ("There is a difference between recognizing a common law 'duty to protect' that arises when a police officer and an individual citizen are in a special relationship and recognizing a duty arising from the Constitution to intervene to prevent the violation of constitutional rights such as the right against the use of excessive force."). Accordingly, this court will decline the officer defendants' invitation to analyze their qualified immunity defenses to Johnson's section 1983 claims under the "public duty" doctrine articulated by the Michigan courts. This court will, instead, analyze the claims of qualified immunity under the two-part standard set forth above.

■ Upon review of the pleadings and the relevant authorities, this court finds that Johnson has sufficiently alleged a violation of a clearly established right. It is beyond peradventure, and the officer defendants do not suggest otherwise, that the right to be free from unreasonable seizures or the use of excessive force is clearly established. *Graham v. Connor,* 490 U.S. 386, 392–93, 109 S.Ct. 1865, 1869–1870 (1989). It is also clear that this right extends to unintended persons who are the object of a willful taking. *Brower,* 489 U.S. at 596, 109 S.Ct. at 1381. Accordingly, the officer defendants cannot claim qualified immunity for their conduct on April 11, 1994 on the grounds that the right asserted in Johnson's complaint is not clearly established.

■ Similarly, the officer defendants are not entitled to summary judgment under the second prong of the qualified immunity test articulated in *Harlow.* Under that prong, the question of whether a particular application of force is excessive, and thus violative of clearly established law, turns upon whether the official's actions were objectively reasonable under the circumstances. *Anderson,* 483. U.S. at 640, 107 S.Ct. at 3039; *Jackson v. Hoylman,* 933 F.2d 401, 402 (6th Cir.1991). This objective reasonableness standard requires a fact-specific, case-by-case analysis to determine whether a reasonable official in the defendant's position could have believed that his conduct was lawful in light of clearly established law and the information he possessed. *Pray,* 49 F.3d at 1158;

*Adams,* 31 F.3d at 386. In the context of claims of excessive force under the Fourth Amendment, the second prong of the *Harlow* qualified immunity analysis turns upon the same objective reasonableness standard embodied in the Fourth Amendment. *Jackson,* 933 F.2d at 402.

For the reasons discussed above, this court must deny the officer defendants' motions for summary judgment on the ground of qualified immunity, because questions of fact exist as to whether the officers' conduct was objectively reasonable under the circumstances. This court acknowledges that qualified immunity is a question of law to resolved at the earliest possible point in the litigation. *Pray,* 49 F.3d at 1161. This court finds, however, that summary judgment in not appropriate because significant factual disputes exist concerning an issue upon which the question of immunity turns. Specifically, it is disputed as to whether, or which of, the defendants knew or had reason to know that Johnson was present in the house at the time the fire was started, or, in the case of defendant Fisette, whether all of the defendants had any knowledge of, or involvement in, the setting of the fire.

These disputes about the events of April 11, 1994 make it impossible to determine whether the defendants performed the acts that violate clearly established rights. *Poe v. Haydon,* 853 F.2d 418, 426 (6th Cir.1988). As the Sixth Circuit has often recognized, "the jury becomes the final arbiter of [a defendant's] claim of immunity, [whenever] the legal question of immunity is completely dependant upon which view of the facts is accepted by the jury." *Brandenburg v. Cureton,* 882 F.2d 211, 215–16 (6th Cir.1989). Accordingly, because it is impossible to determine whether a reasonable officer in the position of the officer defendants would have known that the intentional setting of a fire at 15374 Fairfield on April 11, 1994 violated Johnson's clearly established right to free from unreasonable seizures or excessive force, the officer defendants' motions for summary judgment based upon qualified immunity must be denied.

## B. Defendant City of Detroit's Motion for Summary Judgment

In addition to the officer defendants, Johnson's complaint seeks to hold the City of Detroit liable for the alleged deprivation of her Fourth Amendment rights under the theory of municipal liability articulated in *Monell v. Department of Social Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Johnson's complaint alleges that the City owed Johnson a duty to "adequately train it's officers so as to prevent both the intentional arson of occupied buildings and the failure of fellow officers to act accordingly to prevent the crime under those circumstances." (Complaint at ¶¶ 13, 21). Johnson's complaint further asserts that the City breached this duty to adequately train the officer defendants and that the City "knew or should have known of the foreseeable course of the officers' conduct." (Complaint at ¶ 16). In her response to the City's motion for summary judgment, Johnson submits that the alleged failure to train reflects a "deliberate indifference to the right of persons with whom the police come in contact."

Upon review of the authorities and the arguments in support of and in opposition to the City's motion for summary judgment, this court finds that summary judgment is appropriate, as Johnson has failed to adduce any evidence sufficient to support a claim for municipal liability. Specifically, Johnson has not raised a material question of fact concerning the existence of an official policy or custom of the City of Detroit which permits or authorizes the use of excessive force in the manner alleged in the complaint. Moreover, Johnson has failed to present facts sufficient to demonstrate that the alleged failure to train the defendant officers constituted "deliberate indifference" to the rights of others.

■ In the landmark case of *Monell v. Department of Social Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that Congress intended section 1983 to apply to municipal bodies. The Court noted, however, that municipal liability is not unlimited. "A municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983

on a *respondeat superior* theory." *Id.* at 691, 98 S.Ct. at 2036. Rather, liability is incurred only if "action pursuant to official municipal policy of some nature caused a constitutional tort." *Pembaur v. Cincinnati,* 475 U.S. 469, 477, 106 S.Ct. 1292, 1297, 89 L.Ed.2d 452 (1986) (quoting *Monell,* 436 U.S. at 691, 98 S.Ct. at 2036); *Alioto v. City of Shively,* 835 F.2d 1173, 1175 (6th Cir.1987). The requirement of an official policy distinguishes the acts of the employee from those of the municipality, ensuring that the municipality is held responsible only for the latter. *Id.* at 479–80, 106 S.Ct. at 1298–99.

▇▇▇▇▇ A policy need not be an official order from the municipality's legislative body or agencies in order to justify municipal liability under § 1983. The single decision of an individual with final authority to establish municipal policy can be sufficient to justify municipal liability. *Id.* at 480, 106 S.Ct. at 1298–99. Additionally, liability may be founded upon a custom of the city, even if not officially approved by the municipality, or a policy of inadequate training or supervision. *Id.* at 483–484 n. 10, 106 S.Ct. at 1300 n. 10; *City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). As indicated above, however, Johnson has not raised a material question of fact concerning the existence of any of the above situations in which municipality liability exists.

▇▇▇ Johnson has failed to put any evidence on the record to indicate that the City of Detroit has a policy or custom of authorizing or allowing its officers to set houses ablaze in the course of their duties. Indeed, in her response to the City's motion for summary judgment, Johnson submits Chapter 13 of the Detroit Police Department Manual, which outlines the proper procedure for making a narcotics raid and requires the raids to be planned and performed in accordance with all applicable laws. Johnson points to no provision in the Department Manual which authorizes the burning of houses during a narcotics raid or otherwise. Moreover, officer Wells acknowledged that the lighting of the fire and the failure to report the fire violated department policy. It is clear from the evidence, therefore, that the official policy of the City was the direct antithesis of the actions taken by the officer defendants. Accordingly, based upon Johnson's evidence, a reasonable factfinder could not conclude that the officer defendants acted pursuant to a stated policy of the City of Detroit.

Similarly, Johnson has failed to present facts from which a factfinder could reasonably infer the existence of "a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute 'custom or usage' with the force of law.'" *City of St. Louis v. Praprotnik,* 485 U.S. 112, 127, 108 S.Ct. 915, 926, 99 L.Ed.2d 107 (1988) (citations omitted). In her response the City's motion for summary judgment, Johnson submits that the City was aware that its officers had conducted prior raids on the house at 15374 Fairfield in contravention of department policy and that it "acquiesced in this behavior even though it was a violation of established written policy." Johnson fails to present any evidence in support of this assertion, however.

Indeed, the only evidence of a constitutional or departmental policy violation that Johnson has submitted concerns the events of April 11, 1994. The Supreme Court and the Sixth Circuit have been clear, however, that a single isolated incident of the use of excessive force by a police officer cannot, alone, support an inference of a customary practice sufficient to justify municipal liability under section 1983. *Oklahoma City v. Tuttle,* 471 U.S. 808, 823–34, 105 S.Ct. 2427, 2436–42, 85 L.Ed.2d 791 (1985); *Dorsey v. City of Detroit,* 858 F.2d 338, 345 (6th Cir. 1988). Because Johnson has failed to produce any evidence of other incidents of intentional burning of houses during unauthorized raids, this court cannot infer that the particular use of excessive force alleged in Johnson's complaint is so pervasive as to constitute a policy or custom of the City of Detroit or its police department.

▇▇▇▇▇ Finally, Johnson has failed to present evidence to support her claim that the officers of the Detroit Police Department were inadequately trained or that the lack of adequate training asserted in her complaint

reflects a "deliberate indifference" on the part of the City. It is clear that a lack of adequate training may support a claim for municipal liability under section 1983 "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton,* 489 U.S. at 388, 109 S.Ct. at 1204–05.[8] It is also clear that, under *Tuttle,* the fact that only a single unconstitutional act is alleged supports a conclusion that the act in question was not caused by a policy or that the need for heightened training or screening was not obvious. *Tuttle,* 471 U.S. at 821–24, 105 S.Ct. at 2435–37.

As indicated above, Johnson has not submitted any evidence indicating that the officer defendants were inadequately trained or that the alleged need for heightened training was obvious to the City. In substance, Johnson submits that, because the officer defendants were instructed in the Department's rules and regulations over ten years ago and not required to revisit those rules since then, the City has failed to provide adequate training regarding its rules and regulations. Even if this court accepts Johnson's argument and assumes that the officer defendants were inadequately trained regarding the rules and regulations, there is simply no evidence to suggest that this alleged inadequacy of training was obvious to the City. As such, this court cannot conclude that the City was "deliberately indifferent" for purposes of liability under section 1983. Because Johnson has failed to raise a question of material fact concerning the existence of any policy or custom, including a policy of inadequate training, Johnson's claims against the City of Detroit cannot succeed. Summary judgment is appropriate.

## IV. Conclusions

After viewing the record in a light most favorable to the nonmoving party, this court finds that summary judgment is not warranted for Johnson's section 1983 claim against the officer defendants. This court finds that the intentional burning of the house at 15374 Fairfield on April 11, 1994 did constitute a seizure under the Fourth Amendment, irrespective of the officer defendants' motive or personal knowledge of Johnson's presence. Moreover, this court finds that material questions of fact exist concerning whether any of the officer defendants' conduct was unreasonable within the meaning of the Fourth Amendment or for purposes of the doctrine of qualified immunity. Specifically, material questions of fact exist concerning whether the officers knew or had reason to know of Johnson's presence in the house at the time of the fire. Moreover, a genuine issue of material fact exists as to whether defendant Fisette was aware of or involved in the setting of the fire. Accordingly, the officer defendants' motions for summary judgment must be denied.

This court finds, however, that defendant City of Detroit's motion for summary judgment should be granted, as Johnson has failed to adduce evidence which would create a material question of fact concerning the existence of a policy or custom of the City of Detroit upon which liability could be founded under section 1983.

### *ORDER*

**THEREFORE, IT IS HEREBY ORDERED** that defendants Neil Wells, John Fisette and Janet Jeczen's motions for summary judgment are **DENIED.**

**IT IS FURTHER ORDERED** that defendant City of Detroit's motion for summary judgment is **GRANTED.**

**SO ORDERED.**

8. The logic underlying this conclusion was explained by the Supreme Court in *City of Canton v. Harris:*
> It may seem contrary to common sense to assert that a municipality will actually have a policy of not taking reasonable steps to train its employees. But it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that policy makers of the city can reasonably be said to have been deliberately indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury. 489 U.S. at 390, 109 S.Ct. at 1205.

## PARTIAL JUDGMENT

This action came before this court, the Honorable Paul V. Gadola, District Judge presiding, the issues having been fully presented, the court being fully advised in the premises, and a decision having been duly rendered,

**IT IS HEREBY ORDERED AND ADJUDGED** that the plaintiff, Angela Fay Johnson, take nothing in this action against the defendant, City of Detroit, and that the section 1983 claims asserted against the City in her February 13, 1995 complaint be **DISMISSED** with prejudice.

**IT IS FURTHER ORDERED** that the clerk of the court serve a copy of this judgment by United States mail on counsel for the parties named in the caption above.

**SO ORDERED.**