**Annette WALLACE, et al., Plaintiffs,**

v.

**CITY OF SHELBY, et al., Defendants.**

**No. 96 CV 0481.**

United States District Court,
N.D. Ohio,
Eastern Division.

May 30, 1997.

J. Eric Fleischauer, Mansfield, OH, for Plaintiffs.

Thomas Ignatius Michals, Richard P. Goddard, Suzanne F. Day, Calfee, Halter & Griswold, Cleveland, OH, for Defendants.

## MEMORANDUM OF OPINION AND ORDER

NUGENT, District Judge.

This matter comes before the Court on Defendants' Motion for Summary Judgment pursuant to Fed.R.Civ.P. 56. (Document # 27). For the reasons stated below, Defendants' Motion is GRANTED with respect to all claims against Defendant David Mack and DENIED AS MOOT with respect to the claims against all other Defendants.

### Procedural History

Plaintiffs Annette and Joseph Wallace filed a two count Complaint on March 6, 1996, pursuant to 42 U.S.C. § 1983 against Defendants, Police Officer David Mack, Auxiliary Officer Ryan Randall, Police Chief John Van-Wagner, the City of Shelby, and the Shelby Police Department, alleging that Defendants violated their rights under the Fifth and Fourteenth Amendments of the Constitution when Mrs. Wallace suffered injuries during the course of her arrest on February 10,

1995. Mr. Wallace has asserted a derivative claim of loss of consortium.

Defendants filed a Motion for Summary Judgment on October 31, 1996. (Document # 27). While Defendants' Motion for Summary Judgment was pending, Plaintiffs filed a Notice to Dismiss all Defendants except Officer David Mack pursuant to Fed.R.Civ.P. 41(a). The Court entered an Order dismissing all Defendants except Officer Mack on May 5, 1997. Thus, the only claim remaining is Plaintiff's claim against Officer Mack, in his personal capacity, alleging that Officer Mack, while acting under color of state law, violated Plaintiffs' rights under the Fifth and Fourteenth Amendments of the Constitution, by allegedly using excessive force during the arrest of Mrs. Wallace.

Plaintiffs filed a Memorandum in Opposition to Defendant's Motion for Summary Judgment on December 2, 1996, limited to their claim against Officer Mack. Defendants' filed a Reply in Support of their Motion for Summary Judgment on December 9, 1996.

### Statement of Facts

The following factual summary is based on the parties' statements of facts. Those material facts which are controverted and supported by deposition testimony, affidavit or other evidence are stated in the light most favorable to Plaintiffs, the non-moving parties. On the night of Friday, February 10, 1995, the Wallaces visited two different bars. During the course of the evening Mrs. Wallace consumed four drinks. At or around 11:45 p.m. the Wallaces left the bar to go home over Mrs. Wallace's objection. The Wallaces argued during the ride to their home. At some point during the trip, Mrs. Wallace told her husband to pull over because she wanted to walk home. There was snow on the ground and it was a cold night. Mrs. Wallace was not dressed warmly enough to walk home. (Mrs. Wallace Dep. at 19). Mrs. Wallace got out of the car and began walking home. When Mr. Wallace got out of the car and called to her, Mrs. Wallace ran into a field and fell in the deep snow in a ditch. Mr. Wallace got out of the car and tried to pull Mrs. Wallace out of the deep snow in the ditch. (Mrs. Wallace Dep. at 20–21).

Defendant Officer Mack of the Shelby Police Department, who had also been deputized as a Deputy Sheriff for the Richland County Sheriff's Department, saw the Plaintiffs' car at the side of the road and two people struggling in the snow. (Mack Dep. at 11–12, Mack Aff. at para. 6). Officer Mack stopped his car and separated the Wallaces. It appeared to Officer Mack that Mrs. Wallace was highly intoxicated. Mrs. Wallace was directed to sit in Officer Mack's police cruiser. Mr. Wallace told Officer Mack that he and his wife had been arguing, that his wife had gotten out of the car to walk home, and that he was trying to get her out of the snow and back in the car when Officer Mack stopped.

Mrs. Wallace cursed loudly in the back of the police cruiser. There is some dispute over whether she was kicking and hitting the seats in the police cruiser. Officer Mack advised Mrs. Wallace that she was under arrest. After Mrs. Wallace exited the police cruiser, she was asked to put her hands behind her back so that she could be handcuffed. Mrs. Wallace yelled "No," and clasped her hands together in front of her. She began yelling for her husband to help her. Officer Mack repeated the instruction to put her hands behind her and told her several times to stop resisting arrest Officers Mack and Randall attempted to pull Mrs. Wallace's hands apart.

When the officers were unsuccessful at separating Mrs. Wallace's hands, Officer Mack decided to perform a leg sweep to subdue Mrs. Wallace. When Officer Mack attempted the leg sweep, his plant foot slipped on the ice, and he lost his balance. Officer Mack, Officer Randall and Mrs. Wallace fell to the ground. Mrs. Wallace hit the ground face first, injuring her face. Mrs. Wallace did not realize at first that she had been injured; she did not tell the officers that she was hurt or request medical attention.

After the fall, Mrs. Wallace was handcuffed and transported to the police station. At the police station Mrs. Wallace consented to the administration of a breathalyzer test which revealed her blood alcohol content to

be 0.127. On July 17, 1995, Mrs. Wallace pled no contest to a charge of disorderly conduct and was convicted, fined $100 and the charge of resisting arrest was dismissed.

### Standard for Summary Judgment

Summary judgment is appropriate where the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact

*Celotex v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (citing FED.R.CIV.P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion "in the light most favorable to the party opposing the motion." *U.S. v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962), *see also U.S. v. Hodges X–Ray, Inc.,* 759 F.2d 557, 562 (6th Cir.1985).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.,* 48 F.3d 937, 941 (6th Cir.1995) (citing *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552). Accordingly, "[It]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis,* 57 F.3d 476, 478 (6th Cir.1995) (quoting *Anderson,* at 248–49, 106 S.Ct. at 2510 (1986)). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11 (citation omitted). In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252, 106 S.Ct. at 2512. However, if the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmover. The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Department of Transportation,* 53 F.3d 146, 149 (6th Cir.1995). The text of FRCP 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

*Id.* The Federal Rules identify the penalty for the lack of such a response by the non-moving party as an automatic grant of summary judgment, where otherwise appropriate.

Though parties must produce evidence in support of and in opposition to a motion for summary judgment, not all types of evidence are permissible. The Sixth Circuit has concurred that, "'it is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.'" *Wiley v. U.S.,* 20 F.3d 222 (6th Cir.1994) (quoting *Beyene v. Coleman Sec. Servs., Inc.,* 854 F.2d 1179, 1181 (9th Cir.1988)). Rule 56(e) also has certain, more specific requirements:

[it] requires that affidavits used for summary judgment purposes be made on the basis of personal knowledge, set forth admissible evidence, and show that the affiant is competent to testify. Rule 56(e) further requires the party to attach sworn or certified copies to all documents referred to in the affidavit. Furthermore, hearsay evidence cannot be considered on a motion for summary judgment.

*Wiley,* at 225–26 (citations omitted). However, evidence not meeting this standard may be considered by the district court unless the opposing party affirmatively raises the issue of the defect. The burden is on the opposing party to object to the improper evidence; failure to object constitutes a waiver.

> If a party fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived, and [the Sixth Circuit] will review such objections only to avoid a gross miscarriage of justice.

*Id.* at 226 (citations omitted).

As a general matter, the district judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter. *Id.* at 249, 106 S.Ct. at 2510–11. The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

In sum, proper summary judgment analysis entails:

the threshold inquiry of determining whether there is the need for a trial— whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511.

### Discussion

 The only claim remaining after Plaintiffs' voluntary dismissal of the other Defendants is their claim against Officer Mack in his personal capacity.[1] Plaintiffs contend that Officer Mack violated Mrs. Wallace's constitutional rights by using excessive force, specifically a leg sweep, when arresting her, causing her injury. Officer Mack asserts that Plaintiffs' claim must be dismissed under the doctrine of qualified immunity.

In cases where qualified immunity is asserted as an affirmative defense to claims for damages, the U.S. Supreme Court has held that,

> government officials performing discretionary functions generally are shielded from liability for civil actions insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

*Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (citations omitted). The Supreme Court held that, with respect to motions for summary judgment based on qualified immunity, "the judge may appropriately determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred. *Id.* (footnote omitted). Resolution of claims of qualified immunity is a question of law for the district court." *O'Brien v. City of Grand Rapids,* 23 F.3d 990 (6th Cir.1994) *citing Poe v. Haydon,* 853

---

1. Plaintiffs have effectively abandoned any claims against Officer Mack in his official capacity. Claims against an officer in his official capacity are treated as claims against the municipality. *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978). To prevail, a plaintiff must establish a direct causal link between a city's policy or custom and the alleged constitutional deprivation. *Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). Plaintiffs' dismissal of the City of Shelby and their failure to oppose Defendants' Motion for Summary Judgment as it pertains to the City of Shelby and any alleged custom or policy, bars any official capacity claim against Officer Mack.

F.2d 418, 424 (6th Cir.1988), *cert. denied,* 488 U.S. 1007, 109 S.Ct. 788, 102 L.Ed.2d 780 (1989).

The applicable standard is "one of objective reasonableness, analyzing claims of immunity on a fact-specific, case-by-case basis to determine whether a reasonable official in the defendants' position could have believed that his conduct was lawful, in light of clearly established law and the information he possessed." *Pray v. City of Sandusky,* 49 F.3d 1154, 1158 (6th Cir.1995) (citing *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

The question in a given case is therefore, " 'whether any officer in the defendant's position, measured objectively, would have clearly understood that he was under an affirmative duty to have refrained from such conduct.' " *Id.* (quoting *Brandenburg v. Cureton,* 882 F.2d 211, 215 (6th Cir.1989)). Moreover, if police officers of "reasonable competence" would disagree on this issue, "immunity should be recognized." *Malley v. Briggs,* 475 U.S. 335, 349, 106 S.Ct. 1092, 1100, 89 L.Ed.2d 271 (1986). Qualified immunity constitutes a powerful shield for public officials, providing "ample protection to all but the plainly incompetent or those who knowingly violate the law." *Id.* at 335, 106 S.Ct. at 1093.

■ As with summary judgment, the burden of proof shifts between parties in a case where a defendant asserts that he is qualifiedly immune from suit. Initially, as with all other civil cases, the plaintiff bears the burden of setting out claims sufficient to state a cause of action. Once the defendant responds with an assertion of qualified immunity, the burden of proof then shifts to that defendant; he must show that no genuine issue of material fact exists which would defeat his claim of immunity. *Pray v. City of Sandusky,* 49 F.3d at 1158. Once the defendant has done so, the burden shifts back to the plaintiff who must then "allege and prove that the defendant official violated a clearly established right of which a reasonable person would have known." *Id., Adams v. Metiva,* 31 F.3d 375, 386 (6th Cir.1994); *See generally Rich v. City of Mayfield Heights,* 955 F.2d 1092, 1095 (6th Cir.1992).

■ This burden requires that the plaintiff: (1) identify a clearly established right alleged to have been violated; and (2) establish that a "reasonable officer in the defendant's position should have known that the conduct at issue was undertaken in violation of that right." *Pray,* 49 F.3d at 1158; *Greene v. Reeves,* 80 F.3d 1101, 1103 (6th Cir.1996). The ultimate burden remains with the plaintiff to show that the defendant is not entitled to the asserted immunity. *Wegener v. Covington,* 933 F.2d 390, 392 (6th Cir. 1991).

Thus, to avoid summary judgment Plaintiffs must: (1) identify a clearly established right which they allege was violated; and (2) that their rights were so clearly established that, when Officer Mack arrested Mrs. Wallace, a reasonable law enforcement officer would have clearly understood that utilizing a leg sweep violated Plaintiffs' clearly established right. *Anderson v. Creighton,* 483 U.S. at 640, 107 S.Ct. at 3039; *Rich v. City of Mayfield Heights,* 955 F.2d at 1095; *Dominque v. Telb,* 831 F.2d 673, 675 (6th Cir. 1987).

■ Plaintiffs assert that the use of excessive force is itself a violation of a clearly established constitutional right in "cases dealing with qualified immunity". (Plaintiffs' Opp. at 7). The cases cited by Plaintiff involving claims of excessive force in making arrests or seizures arise under the Fourth Amendment and are governed by the Fourth Amendment's "objective reasonableness" standard. *See Graham v. Connor,* 490 U.S. 386, 397, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989) (The test of whether an officer used appropriate force to effect an arrest is "whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.") While Plaintiffs did not specifically identify the Fourth Amendment as the source of their rights, they did allege that Defendants used excessive force in subduing and arresting Mrs. Wallace. Thus, for the purposes of analyzing Defendants' claim of qualified immunity the Court will presume that Plaintiffs

identified a constitutional right which they allege that Defendants violated.[2]

The dispositive question in this instance is thus, whether a reasonable police officer would have understood that the employment of a leg sweep in these circumstances was unreasonable and violated Plaintiffs' "clearly established right" to be free from the use of excessive force during an arrest.

■ Claims that a police officer used excessive force in making an arrest are properly analyzed under the Fourth Amendment's "objective reasonableness" test rather than under a substantive due process standard. *Graham v. Connor*, 490 U.S. 386, 388, 109 S.Ct. 1865, 1867–68, 104 L.Ed.2d 443 (1989). In *Graham*, the Supreme Court recognized that police officers are empowered to use reasonable force to effect an arrest:

> [T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.... Because "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," ... however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight ...
>
> The "reasonableness" of a particular use of force must by judged from the perspective of a reasonable officer on the scene, rather than the 20/20 vision of hindsight.... With respect to a claim of excessive force, the same standard of reasonableness at the moment applies: "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.
>
> As in other Fourth Amendment contexts, however, the "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.

*Id,* 490 U.S. at 396–97, 109 S.Ct. at 1872 (citations omitted).

In this case Officer Mack observed Plaintiffs struggling in the snow. He separated the Wallaces, noting that Mrs. Wallace appeared to be highly intoxicated. (Mack Aff. para. 6–7). Officer Mack instructed Mrs. Wallace to sit in the back seat of the police cruiser. According to Officer Mack's testimony and that of Mrs. Wallace, Mrs. Wallace was agitated when she got into the back of the police cruiser. She was cussing and swearing loudly.[3] Officer Mack told Mrs. Wallace that she was under arrest for public intoxication, among other charges, and asked her to exit the police cruiser. (Mack Aff. para. 9). Officer Mack instructed Mrs. Wallace to put her hands behind her back so she could be handcuffed. Mrs. Wallace said "No" and clasped her hands together in front of her so she could not be handcuffed. (Mack Aff. para. 10; Mrs. Wallace Dep. p. 25–26). She yelled for her husband to help her. (Ms. Wallace Dep. p. 28). Officer Mack again informed Mrs. Wallace that she was under arrest and requested that she place her hands behind her back Again Mrs. Wallace said "No" and continued to keep her hands clasped in front of her. Officer Mack told Mrs. Wallace several times to stop resisting arrest. (Mrs. Wallace Dep, p. 28). Officers Mack and Randall tried several times, without success, to pry Mrs. Wallace's hands apart. (Mack Aff. para. 11; Mrs. Wal-

---

**2.** Plaintiffs' Complaint avers that Defendants' conduct deprived Plaintiffs of their rights to equal protection of the laws and impeded the due course of justice, in violation of the Fifth Amendment and Fourteenth Amendments of the Constitution.

**3.** For the purposes of this Motion, the Court will ignore the Officer's statement that Mrs. Wallace was kicking and flailing around because Mrs. Wallace denies that she kicked or flailed.

lace Dep. p. 27–28). Finally, Officer Mack decided to attempt a leg sweep, which is a take down maneuver, to gain control of Mrs. Wallace and effect the arrest. Officer Mack's planted foot slipped when he attempted the leg sweep and caused Officer Mack, Officer Randall and Mrs. Wallace to fall. (Mack Aff. para. 13–14). Officer Mack states that he used the leg sweep in accordance with the "Action Response Use of Force Continuum" that he received during his police training. Under those guidelines, an officer may employ a take down maneuver in response to a suspect's action in pulling away from an officer, refusing to move, or dead weight. (Mack Aff. para. 13).

Plaintiffs claim that Mrs. Wallace was not resisting arrest, she was merely resisting the application of the handcuffs. Moreover, Plaintiffs contend that Mrs. Wallace had not committed a serious crime; was not a danger to herself or others, and could have been transported to the police station without handcuffs. Accordingly, Officer Mack's decision to implement a leg sweep was unreasonable in these circumstances, especially since the take down was done in such a way as to cause Mrs. Wallace injury. Plaintiffs argue that the fact that Officer Mack slipped and unintentionally caused himself and Mrs. Wallace to fall is irrelevant because motive or ill will is not a favor to be analyzed under *Graham.*

Appropriately viewed "in the light most favorable" to Plaintiffs, the facts of the instant case support Defendants' Motion. *See U.S. v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). Contrary to Plaintiffs' assertions, it is not apparent that Mrs. Wallace was not resisting arrest, but merely the application of the handcuffs. Even under Mrs. Wallace's version of the facts, she kept repeating "no" when Officer Mack told her she was under arrest and instructed her to put her hands behind her back. Rather than complying, Mrs. Wallace kept saying "no", clasping her hands in front of her despite the officers' attempts to pull them apart, and yelled for her husband. The next step in Officer Mack's training was to perform a take down maneuver. While Plaintiffs are correct that

Officer Mack's motive is irrelevant in this analysis, the facts support the use of a leg sweep to effect Mrs. Wallace's arrest. The fact that Officer Mack slipped during his attempt to perform a leg sweep does not transform a reasonable response into an unreasonable response or make him strictly liable for an unanticipated injury.

Plaintiffs have failed to show that a reasonable police officer in the position of Officer Mack would have clearly understood that he was under an affirmative duty to have refrained from administering a leg sweep in these circumstances. *See Pray,* 49 F.3d at 1158. As such, Plaintiffs have failed to defeat Officer Mack's assertion of qualified immunity.

Accordingly, Defendants' Motion for Summary Judgment (Document # 27) is GRANTED as to all claims asserted against Defendant Officer David Mack and DENIED AS MOOT with respect to all previously dismissed Defendants.

IT IS SO ORDERED.

### JUDGMENT ENTRY

This matter comes before the Court on Defendants' Motion for Summary Judgment pursuant to Fed.R.Civ.P. 56. (Document # 27). For the reasons stated below, Defendants' Motion is GRANTED as to all claims against Defendant Officer David Mack. Defendants' Motion for Summary Judgment is DENIED AS MOOT as to all other Defendants as Plaintiffs have, with Court approval, dismissed all the other Defendants pursuant to Fed.R.Civ.P. 41(a). All costs to Plaintiffs.

IT IS SO ORDERED.